## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| SCHOOL SPECIALTY, LLC, | ) ) ) |
| Plaintiff, | ) ) Court No. 24-00098 |
| v. | ) ) |
| UNITED STATES, | ) ) ) |
| Defendant, | ) ) ) ) |

### COMPLAINT

School Specialty, LLC ("School Specialty" or "Plaintiff") by and through its attorneys alleges and states the following claims against defendant, the United States:

### JURISDICTIONAL STATEMENT

1. School Specialty seeks judicial review of the U.S. Department of Commerce's ("Commerce") Final Scope Ruling, *Certain Cased Pencils from the People's Republic of China: Scope Ruling on Products Produced by School Specialty, LLC in the Philippines* (Case No. A-570-827) ("Final Scope Ruling"), issued on May 6, 2024.

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) because this action is commenced under 19 U.S.C. § 1516a(a)(2)(B)(vi). This action contests Commerce's Final Scope Ruling under 19 U.S.C. § 1516a(a)(2)(B)(vi) regarding whether a particular type of merchandise is within the class or kind of merchandise describe in an existing finding of dumping or antidumping or countervailing duty order.

3. School Specialty is a U.S. educational products manufacturer and importer of the subject merchandise and is an interested party as defined by 19 U.S.C. § 1677(9)(A). School Specialty

participated in the proceeding before Commerce that is subject of this action, including by requesting the Final Scope Ruling, filing questionnaire responses, and rebuttal comments. School Specialty is being adversely affected by Commerce's Final Scope Ruling against it. Therefore, School Specialty had standing under 28 U.S.C. § 2631(c), 1516a(a)(2)(A)(ii) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF THIS ACTION

4. Commerce issued the Final Scope Ruling on May 6, 2024, and Commerce mailed the Final Scope Ruling to the interested parties via certified mail on May 7, 2024. This action was timely commenced by filing a summons on June 3, 2024, which was within 30 days of the date of mailing the Final Scope Rulings. School Specialty is also filing this Complaint within 30 days of filing the Summons. Therefore, this action was commenced within the time required pursuant to 19 U.S.C. §1516a(a)(2)(A)(ii), 28 U.S.C. § 2636(c), and Rule USCIT Rule 6(a)(1). This complaint is timely filed within 30 days of the filing of the Summons pursuant to 1516a(a)(2)(A)(ii).

## STATEMENT OF FACTS

5. On December 28, 1994, Commerce issued an antidumping order on certain cased pencils from the People's Republic of China ("China"). *See Antidumping Duty Order: Certain Cased Pencils from the People's Republic of China*, 59 FR 66909 (December 28, 1994) ("Order").

6. The Order covers "certain cased pencils of any shape or dimension (except as described below) which are writing and/or drawing instruments that feature cores of graphite or other materials, encased in wood and/or man-made materials, whether or not decorated and whether or not tipped (e.g., with erasers, etc.) in any fashion, and either sharpened or unsharpened."

7. On June 7, 2023, School Specialty requested a scope ruling on certain #2 pencils, drawing pencils, and colored pencils ("Scope Request") manufactured and imported from the Philippines to the United States.

8.    The Scope Request explained that the imported pencils are writing and drawing utensils produced in Philippines from raw material inputs imported from China, including wooden slats, graphite/color cores, ferrules, and erasers.

9.    Further, the Scope Request explained that these inputs are not themselves "pencils," *i.e.*, "writing and/or drawing instruments," noting that Commerce has determined in a prior scope ruling that that a "writing instrument" with "a core of graphite that is encased in wood . . . matches the description of those products subject to the {Order}." Scope Request at 10.

10.   The Scope Request also explained that the pencil inputs undergo multiple phases of manufacturing in the Philippines, including grooving the wooden slats, inserting the graphite core between the grooved wooden slats, sandwiching the pencil core between the grooved slats, shaping and finishing the pencils. School Specialty explained that because this manufacturing in the Philippines involves the critical step of inserting the graphite core, the inputs first become writing or drawing instruments, *i.e.*, finished pencils, in the Philippines.

11.   As a result of this processing, School Specialty asked Commerce to determine that the raw materials undergo a substantial transformation in the Philippines, such that the imported pencils are country of origin of the Philippines and are not covered by the Order.

12.   On July 10, 2023, Commerce formally initiated a scope inquiry to determine whether School Specialty's cased pencils are within the scope of the Order. Petitioners submitted comments on the scope application on August 9, 2023, and School Specialty submitted rebuttal comments on August 30, 2023.

13.   On May 6, 2024, Commerce issued its Final Scope Ruling, finding that School Specialty's cased pencils are covered by the scope of the Order.

14. The Final Scope Ruling first noted that the cased pencils meet the physical description of the Order, as they are all "writing and/or drawing instruments that feature cores of graphite or other materials, encased in wood and/or man-made materials." Final Scope Ruling at 9.

15. Turning to origin, Commerce analyzed the following factors set forth in 19 CFR 351.225(j)(1) to determine whether a substantial transformation occurs in the Philippines: (i) whether the processed downstream product is a different class or kind of merchandise than the upstream product; (ii) (the physical characteristics (including chemical, dimensional, and technical characteristics) of the product; (iii) the intended end-use of the downstream product; (iv) the cost of production/value added of further processing in the third country; (v) the nature and sophistication of processing in the third country or countries; and (vi) the level of investment in the third country or countries. Final Scope Ruling at 9-14.

16. Starting with the "class or kind of merchandise" factor, Commerce first noted that "[t]he cased pencil inputs are not included within the scope of the Order and cannot be used as a writing or drawing instrument." Final Scope Ruling at 10. Commerce then determined that because of the processing in the Philippines, "the cased pencil inputs are transformed into a different class or kind of merchandise," which weighed in favor of finding that substantial transformation had occurred. *Id.*

17. However, Commerce determined that the "physical characteristics" factor did not weigh in favor of finding substantial transformation. Rather, Commerce noted that three of the pencils' four components are not further processed in the Philippines, and incorrectly determined that the fourth, the wooden slats, are prefabricated in China for use in School Specialty's pencils. Final Scope Ruling at 11. As for the multiple phases of manufacturing in the Philippines, Commerce only recognized that "some physical characteristics of the cased pencils may be imparted," such as "the color," disregarding the numerous physical characteristics imparted by the grooving, sandwiching, and finishing operations performed in the Philippines. *Id.* at 12.

18. In analyzing the "intended use" factor, Commerce again incorrectly and improperly focused on the pencil inputs being pre-determined for a specific end use at the time of importation, *i.e.*, pencil production, finding that this factor also weighed against finding a substantial transformation. Final Scope Ruling at 12-13.

19. In analyzing the "nature/sophistication of processing in third country" factor, Commerce found that the processing in the Philippines did not rise to the level of sophistication that would indicate substantial transformation, because six of the nine production steps are simple assembly. Final Scope Ruling at 13. Commerce also discounted the remaining production steps on the basis that the components involved "are prefabricated in China to the specific dimensions to be placed in School Specialty's pencil production machinery." *Id.*

20. Finally, as for the "level of investment" factor, Commerce found that it had insufficient information to determine whether the cost for production in the Philippines represents substantial transformation, even though it had failed to issue any questionnaires to obtain this information from the manufacturer of the pencils in the Philippines. Final Scope Ruling at 14.

21. Commerce ultimately concluded, based on "the totality of the factors considered in the analysis of the substantial transformation criteria," that the cased pencil inputs are not substantially transformed in the Philippines and remain country of origin of China. Final Scope Ruling at 14.

22. This appeal followed.

## COUNT 1

23. Plaintiff hereby incorporates, by reference, paragraphs 1 through 22 above.

24. The plain language of the Order only covers "writing and/or drawing instruments," *i.e.*, finished pencils, not inputs used to manufacture finished pencils.

25.     Moreover, as Commerce has previously determined, a "writing instrument" meets the description of products subject to the Order once "a core of graphite . . . is encased in wood." Scope Request at 10. Thus, contrary to its finding in this case, Commerce itself has noted that pencils inputs do not become finished pencils until the graphite core is inserted into wooden slats.

26.     Nevertheless, Commerce determined that upstream pencil inputs are not substantially transformed when they are manufactured into downstream "writing and/or drawing instruments," effectively interpreting the Order to cover both pencil inputs and finished pencils, contrary to its plain language.

27.     Because Commerce interpreted the scope of the Order contrary to the plain language of its terms, the Final Scope Ruling was unsupported by substantial evidence and not in accordance with law.

## COUNT 2

28.     Plaintiff hereby incorporates, by reference, paragraphs 1 through 27 above.

29.     In assessing a product's country of origin to determine whether it is covered by the scope of an antidumping order, 19 CFR 351.225(j)(1) sets forth the "relevant factors" for Commerce to consider in its substantial transformation analysis.

30.     None of the factors in 19 CFR 351.225(j)(1) refer to whether a product's components have a "predetermined use." Nor does the regulation provide for discounting or omitting certain factors if Commerce first makes such a determination.

31.     Nevertheless, in purporting to apply its substantial transformation analysis, Commerce disregarded certain (j)(1) factors, focusing instead on the pencil inputs' predetermined use. As a result, Commerce failed to fully or properly analyze multiple factors set forth in its regulations, such as the "intended use" factor, the extent of the "physical characteristics" imparted by the manufacturing in the Philippines, the "nature and sophistication of processing" in the Philippines.

32. As a result, Commerce misapplied the substantial transformation test set forth in 19 CFR 351.225(j)(1), contrary to its regulatory authority.

33. Commerce's application of the substantial transformation test in the Final Scope Ruling was unsupported by substantial evidence and not in accordance with law.

## PRAYER FOR RELIEF

WHEREFORE, and as challenged herein, Plaintiff respectfully request that this Court:

(1) Enter judgment in favor of School Specialty;

(2) Hold unlawful Commerce's Final Scope Ruling challenged in this Complaint;

(3) Remand this proceeding to Commerce with instructions to revise its Final Scope Ruling in conformity with the Court's decision; and

(4) Grant School Specialty such other relief as the Court may deem appropriate.

Respectfully submitted,

/s/Nithya Nagarajan