IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

SCHOOL SPECIALTY, LLC,

      Plaintiff,

      v.                                                         Court No. 24-00098

UNITED STATES,

                     Defendant,
    and

DIXON TICONDEROGA COMPANY,

      Defendant-Intervenor.

## ORDER

Upon consideration of the plaintiffs Rule 56.2 motion for judgment on the agency record, defendant's opposition, and all other pertinent papers, it is hereby

ORDERED that the plaintiffs Rule 56.2 motion for judgment on the agency record is denied; and it is further

ORDERED that judgment shall issue for the United States.

Dated: _____          _____
        New York, New York              M. Miller Baker, Judge

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

SCHOOL SPECIALTY, LLC,

    Plaintiff,

    v.

UNITED STATES,

        Defendant,

  and

DIXON TICONDEROGA COMPANY,

    Defendant-Intervenor.

Court No. 24-00098
**PUBLIC DOCUMENT**
*[Confidential] information removed from pages 23, 24, and 28*

**DEFENDANT-INTERVENOR'S RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Felicia Leborgne Nowels
Michael J. Larson
Li X. Massie
Akerman LLP
201 E. Park Avenue
Suite 300
Tallahassee, FL 32301
felicia.nowels@akerman.com
(850) 425-1661
*Attorneys for Dixon Ticonderoga Company*

January 28, 2025

i

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ...................................................................................i

TABLE OF AUTHORITIES .............................................................................ii

STATEMENT PURSUANT TO RULE 56.2 .......................................................2

   I.   Administrative Determination Under Review .................................2

   II.   Issues Presented For Review ........................................................2

STATEMENT OF FACTS ...............................................................................3

   I.   The Antidumping Duty Order .......................................................3

   II.   Merchandise Subject to the Scope Inquiry ...................................3

   III.   The Scope Proceeding ................................................................4

SUMMARY OF ARGUMENT .........................................................................8

STANDARD OF REVIEW.............................................................................11

ARGUMENT .............................................................................................13

   I.   Commerce's Substantial Transformation Analysis Is Supported By Substantial Evidence And In Accordance With Law .........................13

      A.   Legal Framework for Country of Origin Scope Rulings ...........14

      B.   Commerce's Substantial Transformation Analysis Framework Is Supported By Substantial Evidence And In Accordance With Law 15

      C.   Commerce's Substantial Transformation Analysis Under the Section 351.225(j) Factors Is Supported By Substantial Evidence And Is In Accordance With Law ..............................................................17

   II.   Commerce Appropriately Considered CBP Rulings....................32

   III.   Conclusion .................................................................................34

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Am. Silicon Techs. v. United States*, 261 F.3d 1371 (Fed. Cir. 2001).....12

*Bell Supply Co. v. United States*, 888 F.3d 1222 (Fed. Cir. 2018)..........18

*Bell Supply Co., v. United States*, 348 F. Supp. 3d 1281 (Ct. Int'l Trade 2018) (*Bell Supply II*) ................................................................ 19, 20, 26

*Crawfish Processors Alliance v. United States*, 483 F.3d 1358 (Fed. Cir. 2007) ....................................................................................................13

*Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034 (Fed. Cir. 1996).........12

*Goldlink Indus. Co. v. United States,* 431 F.Supp.2d 1323 (Ct. Int'l Trade 2006) ...................................................................................... 12, 27, 33

*HLDS (B) Steel SDN BHD v. United States*, Slip Op. 24-6 (Ct. Int'l Trade Jan. 23, 2024) .....................................................................................12

*Home Prods. Int'l, Inc. v. United States*, 837 F.Supp.2d 1294 (Ct. Int'l Trade 2012).........................................................................................21

*King Supply Co. LLC v. United States,* 674 F.3d 1343 (Fed. Cir. 2012) 13

*Laminated Woven Sacks Comm. v. United States*, 716 F.Supp.2d 1316 (Ct. Int'l Trade 2010)..........................................................................14

*Meridian Prods., LLC v. United States*, 85 F.3d 1375 (Fed. Cir. 2017) .11

*Mid Continent Nail Corp. v. United States,* 725 F.3d 1295 (Fed. Cir. 2013) .............................................................................................................13

*Mitsubishi Heavy Indus., Ltd. v. U.S.*, 275 F.3d 1056 (Fed. Cir. 2001) .11

*Nippon Steel Corp. v. U.S.*, 458 F.3d 1345 (Fed. Cir. 2006) ...................11

*PPG Indus., Inc. v. United States*, 768 F. Supp. 354 (Ct. Int'l Trade 1991) ................................................................................................ 12

*QVD Food Co. v. United States*, 658 F.3d 1318 (Fed. Cir. 2011) ..... 14, 31

*Sandvik Steel Co. v. United States,* 164 F.3d 596 (Fed. Cir. 1998). ....... 13

*Sigma Corp. v. United States*, 86 F.Supp.2d 1344 (Ct. Int'l Trade 2000) ............................................................................................ 15, 26, 30

*SMA Surfaces, Inc. v. United States*, 617 F. Supp. 3d 1263 (Ct. Int'l Trade 2023) ................................................................................................ 30

*SSIH Equipment SA v. United States ITC*, 718 F.2d 365 (Fed. Cir. 1983) ................................................................................................ 11

*United States v. Great Am. Ins. Co. of N.Y.*, 738 F.3d 1320 (Fed. Cir. 2013) ................................................................................................ 21

*Zenith Elecs. Corp. v. United States*, 988 F.2d 1573 (Fed. Cir. 1993)....31

**Statutes and Regulations**

19 C.F.R. § 351.225(c)................................................................. 19

19 C.F.R. § 351.225(f)(3)............................................................. 31

19 C.F.R. § 351.225(j) .................................................... 16, 25, 33

19 C.F.R. § 351.225(j)(1)................................................. 7, 15, 16

19 C.F.R. § 351.225(j)(2)............................................................. 15

19 C.F.R. § 351.225(k)(1)....................................................... 7, 14

19 C.F.R. § 351.225(k)(2)............................................................. 7

19 U.S.C § 1516a(b)(1)(B)(i) ...................................................... 11

19 U.S.C § 1516a(a)(2)(B)(vi) .................................................... 11

**Administrative Determinations**

*Antidumping Duty Order: Certain Cased Pencils from the People's Republic of China*, 59 Fed. Reg. 66909 (Dep't of Commerce Dec. 28, 1994) ....................................................................................................3

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| SCHOOL SPECIALTY, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES,<br><br>        Defendant,<br>    and<br><br>DIXON TICONDEROGA COMPANY,<br><br>    Defendant-Intervenor. | Court No. 24-00098<br>**PUBLIC DOCUMENT**<br>*[Confidential] information removed from pages 23, 24, and 28* |

**DEFENDANT-INTERVENOR'S RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, Defendant-Intervenor, Dixon Ticonderoga Company ("Dixon"), respectfully submits this brief responding in opposition to the motion for judgment upon the agency record filed by Plaintiff, School Specialty, LLC's ("School Specialty"). This response is timely filed in accordance with the Court's Order dated September 10, 2024. Because the Department of Commerce's ("Commerce") Final Scope Ruling is supported

1

by substantial evidence and is in accordance with law, we join Defendant,

United States, in requesting that the Court deny Plaintiff's motion and

sustain Commerce's final determination.

## STATEMENT PURSUANT TO RULE 56.2

## I.    Administrative Determination Under Review

The administrative determination under review is Certain Cased

Pencils from the People's Republic of China: Scope Ruling on Products

Produced by School Specialty, LLC in the Philippines, issued May 6, 2024

(P.R. 29)[1] ("Final Scope Ruling"). *See* Appx000420-434.

## II.    Issues Presented For Review

1.    Whether Commerce's determination of no substantial

transformation is supported by substantial evidence and is otherwise in

accordance with law.

2.    Whether Commerce sufficiently considered findings made by

U.S. Customs and Border Protection by acknowledging that School

Specialty had placed such findings on the record, and determining to give

such findings no weight because they were performed under a different

analysis and are not binding on Commerce.

---

[1] P.R. and C.R. refer to documents in the public and confidential records, respectively.

## STATEMENT OF FACTS

### I.    The Antidumping Duty Order

This case concerns the scope of the antidumping duty order on certain cased pencils from China. *See Antidumping Duty Order: Certain Cased Pencils from the People's Republic of China*, 59 Fed. Reg. 66909 (Dep't of Commerce Dec. 28, 1994) ("*Order*"). The scope of the *Order* provides, in relevant part:

> Imports covered by the *Order* are shipments of certain cased pencils of any shape or dimension (except as described below) which are writing and/or drawing instruments that feature cores of graphite or other materials, encased in wood and/or man-made materials, whether or not decorated and whether or not tipped (*e.g.*, with erasers, etc.) in any fashion, and either sharpened or unsharpened.

*Id.*

### II.   Merchandise Subject to the Scope Inquiry

The merchandise subject to this scope inquiry consists of three varieties of pencils: #2 pencils, drawing pencils, and colored pencils. The #2 pencils consist of three subvarieties made of basswood with a graphite core and eraser: (1) a typical #2 pencil, which is a hexagonal writing utensil, measuring 7.5 inches by 0.25 inches in total; (2) primary pencils, which are round, thicker at 7.5 inches by .344 inches, and have a larger graphite lead; and (3) starter pencils, which are hexagonal and slightly thicker again at

3

7.5 inches by .40 inches, with a larger graphite lead. Certain Cased Pencils: Scope Ruling Application (C.R. 1) (Scope Application) at 9-10, Appx000009-10. The drawing pencils are also made of basswood, with a graphite core and measures 7 inches by 0.25 inches. The colored pencils are also hexagonal with a colored wax/clay core measuring 7 inches by 0.28 inches. The pencils described above are produced from raw materials from China: raw wooden slats, graphite cores, colored cores, ferrules, and erasers. The finished pencils are shipped from the Philippines and entered into the United States under the HTSUS subheading of 9609.10.0000, *i.e.*, "Pencils and crayons, with leads encased in a sheath." *Id.* at Appx000010-11; *see also* Final Scope Ruling at 2-3, Appx000421-422.

## III.   The Scope Proceeding

On June 7, 2023, School Specialty filed a scope ruling application requesting Commerce determine whether its #2 pencils, drawing pencils, and colored pencils as manufactured by School Specialty in the Philippines using Chinese inputs and exported from the Philippines to the United States are covered by the scope of the *Order*. *See* Scope Application (C.R. 1), Appx000001-239. On July 10, 2023, Commerce accepted School Specialty's

scope application, and the scope inquiry was deemed initiated. Final Scope Ruling at 1-2, Appx000420-421.

On August 9, 2023, Dixon, the petitioner, submitted comments on School Specialty's scope application, arguing that School Specialty's products fall within the plain language of the scope and that School Specialty failed to demonstrate that the processing in the Philippines brought about a substantial transformation. *See id.*, Appx000421. After Commerce removed certain comments as untimely-filed new factual information, Dixon refiled its comments on February 29, 2024. *See* Dixon's Comments on School Specialty, LLC's Application for a Scope Ruling (C.R. 5) (Dixon's Comments), Appx000302-323.

On August 30, 2024, School Specialty submitted rebuttal comments arguing that the country of origin should be found to be the Philippines, and that the merchandise should not be subject to the *Order*. *See* Rebuttal Scope Comments (C.R. 4) (School Specialty's Rebuttal Comments), Appx000272-301. As part of its Rebuttal Scope Comments, School Specialty attached a ruling issued by U.S. Customs and Border Protection ("CBP") after the Scope Application. Appx000299-301. In Ruling N333392, issued on June 28, 2023, CBP applied its country of origin substantial

transformation test, which is different than the test applied by Commerce, and determined that the country of origin of the same three categories of pencils imported by School Specialty was the Philippines. *Id.*; *see* Appx000287, Appx000299-301. School Specialty noted that Commerce was not bound by the ruling. *Id.* at Appx000287.

On March 25, 2024, Dixon submitted for the record CBP's final determination as to evasion in Enforce and Protect Act ("EAPA") Case No. 7238. *See* Appx000324-374. On April 5, 2024, School Specialty submitted rebuttal comments to this submission. Appx000416-419 ("EAPA Rebuttal").

On May 6, 2024, Commerce published its Final Scope Ruling, which concluded that School Specialty's merchandise is within the scope the *Order*. *See* Final Scope Ruling, Appx000420-434. Commerce first looked to the plain language of the scope of the *Order* and determined that, "a plain reading of the scope language indicates that cased pencils further processed in a third country are covered by the scope if such processing would not otherwise exclude these items had the processing occurred in China." *Id.*, Appx000427-428. Commerce noted that the plain language of the *Order* did not address what varieties of processing may otherwise exclude a product from the scope. *Id.*, Appx000428.

Commerce next considered the physical description of the merchandise and found that because the language of the scope of the *Order* is dispositive, it was unnecessary to further analyze the criteria set forth in 19 C.F.R. § 351.225(k)(1) or to consider the additional factors in 19 C.F.R. § 351.225(k)(2).

Commerce then considered the record under the country of origin factors found in 19 C.F.R. § 351.225(j)(1) and (2) to determine whether School Specialty had met its burden to show that its merchandise is outside the scope of the *Order* because substantial transformation occurs in the Philippines. *See id.* at 4, Appx000423. Commerce found the only factor that weighed in favor of a finding of substantial transformation in the Philippines is whether the processed downstream product is a different class or kind of merchandise than the upstream product. *Id.* at 10-11, Appx000429-430. Commerce found that numerous other factors, including factors concerning the physical characteristics and essential characteristics of the product, the intended end use of the product, and the nature of the sophistication of third-country processing, weigh against a finding of substantial transformation in the Philippines. *Id.* at 11-14, Appx000430-433. Commerce did not reach a determination regarding the cost of

7

production and level of investment factor, finding that the record, as developed by School Specialty, is insufficient to adequately determine whether the cost of production in the Philippines represents a substantial transformation conferring country of origin. *Id.* at 14-15, Appx000433-434.

Commerce determined to give no probative weight to the determinations made by CBP, stating such determinations were made under a different analytical framework and were not binding on Commerce. *Id.* at 9, Appx000428.

Therefore, Commerce determined that based on the totality of the factors considered in the substantial transformation analysis, School Specialty's cased pencils did not undergo substantial transformation in the Philippines, and are thus subject to the scope of the *Order*. *Id.* at 14-15, Appx000433-434.

This appeal followed.

## SUMMARY OF ARGUMENT

Dixon joins Defendant United States in rejecting School Specialty's arguments set forth in its motion for judgment on the agency record and in urging the Court to sustain Commerce's Final Scope Ruling. School Specialty arguments concern two aspects of Commerce's Final Scope

Ruling. First, School Specialty argues substantial evidence does not support Commerce's determination that its merchandise is within the scope of the *Order* because Commerce disregarded relevant factors and relied on other factors absent from its governing test. Second, School Specialty argues Commerce failed to consider a CBP ruling concerning similar merchandise. Commerce, however, correctly determined that School Specialty's merchandise is within the scope of the *Order*.

Commerce's determination is supported by substantial evidence and is otherwise in accordance with law. Commerce properly determined that School Specialty's merchandise is within the scope of the *Order* based on the specific facts on the record, as developed by School Specialty, and considering, under the totality of the circumstances, all factors in 19 C.F.R. § 351.225(j). Commerce appropriately considered (i) whether the processed downstream product is a different class or kind of merchandise; (ii) the physical characteristics of the product; (iii) the intended end-use of the downstream product; (iv) the cost of production/value added of further processing in the Philippines; (v) the nature and sophistication of processing in the third country or countries; and (vi) the level of investment in the third country or countries. After conducting a thorough analysis

based on the specific facts on the record, Commerce correctly determined that the cased pencil inputs manufactured in China are not substantially transformed when used to produce cased pencils in the Philippines, and, therefore, School Specialty's pencils did not undergo substantial transformation in the Philippines. Commerce concluded that the pencils have a country of origin of China and are squarely within the scope of the *Order*. School Specialty is simply dissatisfied with the outcome of Commerce's thorough analysis and now erroneously asks this Court to reweigh the evidence, which is beyond the Court's review.

Commerce's decision to not rely on determinations from CBP is also supported by substantial evidence and is in accordance with law. As noted by School Specialty in it Rebuttal Comments and by Commerce in its Final Scope Ruling, such determinations are not binding on Commerce. Commerce acted in accordance with the law by acknowledging that both School Specialty and Dixon had placed CBP determinations on the record, and correctly found that such determinations were not binding on Commerce. Therefore, Commerce's decision to give the determinations no weight is supported by substantial evidence and is in accordance with the law.

## STANDARD OF REVIEW

This Court may review a determination by Commerce "as to whether a particular type of merchandise is within the class or kind of merchandise described in an existing finding of dumping or antidumping or countervailing duty order." 19 U.S.C. § 1516a(a)(2)(B)(vi); *Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1379 (Fed. Cir. 2017). This Court must affirm "a Commerce scope ruling that is supported 'by substantial evidence on the record' and otherwise 'in accordance with law.'" *Meridian Prods., LLC,* 851 F.3d at 1381 (citing 19 U.S.C § 1516a(b)(1)(B)(i)).

"[I]n the hierarchy of the four most common standards of review, substantial evidence is the second most deferential, and can be translated roughly to mean "is [the determination] unreasonable?" *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006) (quoting *SSIH Equipment SA v. United States ITC*, 718 F.2d 365, 381 (Fed. Cir. 1983)). Under the substantial evidence standard, a party challenging an agency's determination "has chosen a course with a high barrier to reversal." *Id.* at 1352 (quoting *Mitsubishi Heavy Indus., Ltd. v. U.S.*, 275 F.3d 1056, 1060 (Fed. Cir. 2001)).

"Even if it is possible to draw two inconsistent conclusions from evidence on the record, such a possibility does not prevent Commerce's determination from being supported by substantial evidence." *Am. Silicon Techs. v. United States*, 261 F.3d 1371, 1376 (Fed. Cir. 2001) (citing *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1044 (Fed. Cir. 1996)). The substantial evidence standard constitutes "essentially a limited review of the agency determination, insuring that the agency conclusions are reasonably drawn from some evidence, more than a mere scintilla, in light of the record as a whole." *PPG Indus., Inc. v. United States*, 768 F. Supp. 354, 356 (Ct. Int'l Trade 1991). It is not the role of the Court to reweigh evidence, and so "the question is not whether the [C]ourt would have reached the same decision on the same record—rather, it is whether the administrative record as a whole permits Commerce's conclusion." *HLDS (B) Steel SDN BHD v. United States*, Slip Op. 24-6, 2024 WL 24937, at *2 (Ct. Int'l Trade Jan. 23, 2024). Thus, "the Court may not substitute its judgment for that of the [agency] when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Goldlink Indus. Co. v. United States,* 431 F.Supp.2d 1323, 1326 (Ct. Int'l Trade 2006).

Further, Commerce "enjoys substantial freedom to interpret and clarify its antidumping duty orders," including the scope of those orders. *Crawfish Processors Alliance v. United States*, 483 F.3d 1358, 1361 (Fed. Cir. 2007); *Mid Continent Nail Corp. v. United States,* 725 F.3d 1295, 1300 (Fed. Cir. 2013). This is because scope rulings involve "highly fact-intensive and case-specific determination[s]," *King Supply Co. LLC v. United States,* 674 F.3d 1343, 1345 (Fed. Cir. 2012), making it "particularly within [Commerce's] expertise." *Sandvik Steel Co. v. United States,* 164 F.3d 596, 600 (Fed. Cir. 1998).

## ARGUMENT

### I.    Commerce's Substantial Transformation Analysis Is Supported By Substantial Evidence And In Accordance With Law

School Specialty's first issue turns on whether Commerce considered each of the statutory factors. *See* School Specialty, LLC's Rule 56.2 Motion For Judgment On The Agency Record (School Specialty Br.) at 17-36. However, School Specialty's arguments are without merit. Substantial evidence supports Commerce's determination that School Specialty's merchandise is within the scope of the *Order* because Commerce considered

each statutory factor and did not rely on factors beyond those in the governing test.

## A. Legal Framework for Country of Origin Scope Rulings

After publication of an antidumping duty order, importers or producers may request scope rulings to afford clarification as to the status of their products under the order. *See Laminated Woven Sacks Comm. v. United States*, 716 F.Supp.2d 1316, 1321(Ct. Int'l Trade 2010). The entity requesting the scope ruling has the burden of creating an adequate record. *See QVD Food Co. v. United States*, 658 F.3d 1318 (Fed. Cir. 2011). In determining whether a product falls within the scope of an antidumping duty order, Commerce engages in a three-step process. First, Commerce examines the language of the order at issue to determine whether the language itself is dispositive. When the language of the scope of the order is dispositive, further analysis under 19 C.F.R. § 351.225(k)(1) or (2) is unnecessary. Next, where country of origin is at issue, Commerce considers the totality of the circumstances, weighing the following factors in particular:

> (i) Whether the processed downstream product is a different class or kind of merchandise than the upstream product;

14

>    (ii) The physical characteristics (including chemical, dimensional, and technical characteristics) of the product;
>    (iii) The intended end-use of the downstream product;
>    (iv) The cost of production/value added of further processing in the third country or countries;
>    (v) The nature and sophistication of processing in the third country or countries; and
>    (vi) The level of investment in the third country or countries.

19 C.F.R. § 351.225(j)(1).

In addition, under 19 C.F.R. § 351.225(j)(2), Commerce "may consider where the essential component of the product is produced or where the essential characteristics of the product are imparted."

### B. Commerce's Substantial Transformation Analysis Framework Is Supported By Substantial Evidence And In Accordance With Law

First, School Specialty contends that Commerce ignored changes imparted in the Philippines and instead relied on the fact that certain components were prefabricated in China, a factor that is not listed in Commerce's regulations. *See* School Specialty Br. at 17-36. However, Commerce's consideration of evidence of "prefabrication" is in accordance with law, and School Specialty's arguments amount to an inappropriate request for the Court to reweigh the evidence. *See Sigma Corp. v. United States*, 86 F.Supp.2d 1344, 1351 (Ct. Int'l Trade 2000) ("The proper inquiry

upon review of Commerce's determination, however, is whether the particular actions Commerce took were supported by substantial evidence, not whether Commerce could have used an alternative method or different information.").

Commerce's regulations do not prevent Commerce from looking to other factors in addition to each of the factors listed in section 351.225(j). Commerce's regulations instead state that when considering the country of origin, Commerce "*may use any reasonable method* and is not bound by the determinations of any other agency . . . ." 19 C.F.R. § 351.225(j) (emphasis added). In addition, Commerce "may conduct a substantial transformation analysis that considers relevant factors that arise on a case-by-case basis, including" the factors listed in section 351.225(j)(1). 19 C.F.R. § 351.225(j)(1). The regulations do not prohibit Commerce from looking to other factors and do not prescribe specific sub-facts that Commerce may or may not consider under each listed factor.

Further, Commerce's use of the term "prefabrication" and consideration of evidence of prefabrication did not preclude an analysis under the other factors listed in section 351.225(j)(1). Rather, the consideration of evidence of prefabrication is in furtherance of its analysis

of each such factor, which is supported by substantial evidence and is in accordance with law. Therefore, Commerce's use of the term "prefabrication" and consideration of evidence of prefabrication as part of its substantial transformation analysis does not conflict with section 351.225(j), and Commerce's analysis is consistent with the regulatory framework. Dixon also adopts the arguments on this point contained on pages 13-17 of Defendant's Response in Opposition to Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record ("Defendant's Br.") and requests the Court to reject School Specialty's arguments regarding Commerce's consideration of evidence of prefabrication.

### C. Commerce's Substantial Transformation Analysis Under the Section 351.225(j) Factors Is Supported By Substantial Evidence And Is In Accordance With Law

School Specialty incorrectly alleges that Commerce's substantial transformation analysis disregarded relevant factors under section 351.225(j). In its Final Scope Ruling, Commerce determined that the processing of the raw material inputs from China into finished pencils in the Philippines did not constitute substantial transformation. Contrary to School Specialty's arguments, the prefabrication factor was not the sole factor Commerce relied on in making its determination that School

17

Specialty's pencils were within the scope of the *Order*. Rather, in reaching

its conclusion, Commerce lawfully conducted its substantial transformation

analysis by weighing *each* of the factors in 19 C.F.R. § 351.225(j). *See Bell*

*Supply Co. v. United States*, 888 F.3d 1222, 1229 (Fed. Cir. 2018)

(concluding that Commerce may use the substantial transformation

analysis to determine country of origin for an imported article).

Commerce weighed each factor to the extent practicable and, under

the totality of the circumstances, reached its conclusion that School

Specialty's pencils, as described in its scope application, did not undergo

substantial transformation that would cause the pencils to be outside the

scope of the *Order*. School Specialty cites to no statute, regulation, or case

to support its arguments that any of the substantial transformation factors

should outweigh any other factor or should be given a mathematical weight

against another factor. Absent such authority, Commerce's weighing of the

factors, as supported by substantial evidence, should be upheld, because

Commerce considered each of the statutory factors, and School Specialty's

arguments are essentially improper requests for the Court to reweigh each

factor.

### 1.  Class or Kind Determination

Commerce determined that the class or kind factor weighed in favor of finding that substantial transformation had occurred in the Philippines. Final Scope Ruling at 11, Appx000430. School Specialty does not allege that this determination is unsupported by substantial evidence. Instead, School Specialty complains that Commerce did not provide an even more detailed analysis that would have included advice beyond the facts of the scope application as to what hypothetical actions could have risen to the level of substantial transformation. School Specialty Br. at 19-20. School Specialty asks for details on a manufacturing process not detailed in its scope application. *See* 19 C.F.R. § 351.225(c) (allowing scope ruling applications only for a product which is or has been in actual production, rather than a product with hypothetical production). School Specialty's arguments also amount to an improper request for the Court to reweigh a factor that Commerce found in its favor.

Further, contrary to School Specialty's arguments, Commerce satisfied *Bell Supply II*, because it explained how this factor weighed in the balance and why. *See* School Specialty Br. at 20 (citing *Bell Supply Co., v. United States*, 348 F. Supp. 3d 1281, 1289 (Ct. Int'l Trade 2018) (*Bell Supply II*); *see* Final Scope Ruling, Appx, 000428-249. Here, Commerce

considered whether the product falls within the same class or kind of merchandise before and after processing. Final Scope Ruling, Appx000429-430. Commerce considered both School Specialty's and Dixon's arguments on this factor and disagreed with Dixon's arguments. *Id.* at Appx000424-425. Commerce explained that the cased pencil inputs are not included within the scope of the *Order* and cannot be used as a writing or drawing instrument, and therefore, through processing, the inputs are transformed into a different class or kind of merchandise. *Id.* at 10, Appx000429. Commerce weighed this factor in favor of School Specialty, stating that "we find the cased pencil inputs are a different class or kind of merchandise from the finished cased pencils subject to the *Order*. Accordingly, we find that this factor weighs in favor of finding that substantial transformation has occurred." *Id.*, Appx000429-430. Therefore, Commerce properly explained the reasonableness and weight of this factor. Accordingly, Commerce's consideration of class or kind in this case should be upheld because it is supported by substantial evidence and in accordance with law. *See Bell Supply II*, 348 F. Supp. 3d at 1295.

Lastly, to the extent School Specialty alleges Commerce's Final Scope Ruling "changed the scope of the Cased Pencils Order," such cursory

argument is not properly briefed before this Court and is, therefore, waived. *See United States v. Great Am. Ins. Co. of N.Y.*, 738 F.3d 1320, 1328 (Fed. Cir. 2013) ("It is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived."); *see also Home Prods. Int'l, Inc. v. United States*, 837 F.Supp.2d 1294, 1301 (Ct. Int'l Trade 2012) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

### 2. Physical Characteristics and Essential Characteristics Determination

Commerce also properly determined that the physical characteristics and essential characteristics factors weigh in favor of finding that no substantial transformation occurred. Commerce examined where the physical characteristics of the product and the essential characteristics of the product are imparted, and considered whether processing in the Philippines changed the important qualities or use of the components. Final Scope Ruling at 11, Appx000430.

Contrary to School Specialty's arguments, Commerce did not focus only on the pencils' wooden slats while ignoring the other components. School Specialty Br. at 22. In determining where the physical characteristics and essential characteristics of the product are imparted, Commerce considers whether processing in the Philippines changes the important qualities or use of the components. Final Scope Ruling at 11, Appx000430. Commerce considered all four Chinese-origin inputs, and concluded that of the four Chinese-origin inputs, only one is further processed in the Philippines. *Id.* Because the only Chinese-origin input that is further processed in the Philippines is the wooden slats, the analysis correctly considered the wooden slats. *Id.*

As Commerce explained, the cased pencil components retain their original general physical and essential characteristics from China when assembled into a complete cased pencil in the Philippines. *Id.* Commerce acknowledged that the record reflected that the wooden slats from China undergo some additional processing in the Philippines and acknowledged that some physical characteristics of the cased pencils may be imparted in the further production steps in the Philippines, like color. However, Commerce determined that "these are not the essential characteristics

22

defined by the use of the merchandise, all of which are ultimately to be assembled into a writing or drawing instrument." Final Scope Ruling at 11-12, Appx000430-431. Commerce continued, stating that based on the evidence in the record, the wooden slats undergo some additional processing, but are prefabricated in China to the specific dimensions to be placed in School Specialty's pencil production machinery. *Id.* at 11, Appx000430. Therefore, Commerce concluded that the physical characteristics and essential characteristics factors support a finding that School Specialty's cased pencils are not substantially transformed in the Philippines. *Id.* at 11-12, Appx000430-431.

School Specialty does not refute the fact that the components are prefabricated in China to specific dimensions and failed to provide any evidence that would contradict Commerce's findings. Specifically, as Dixon previously submitted in its February 29, 2024 comments (C.R. 4), Appx000302-323), the record shows that School Specialty's Chinese inputs come with labels that show they are clearly designated to be a particular part of a cased pencil. The specific facts on the record show that imported components [████████████████████████████████████████████████ ████████████████████████████████████████

███████████████████████████████████

███████████████████████████████ ] Scope

Application (C.R. 1), Appx000048, Appx000050-51. Regarding the pencil

slats specifically, [███████████████████████████████

████████████████████████████████ ]. *Id.*,

Appx000048-49. The record further includes photographs that suggest the

imported slats are made for a specific pencil size, and nothing on the record

indicates the slats are resized to any degree. *Id.*, Appx000092-96. Similarly,

nothing in the record suggests that the graphite or color cores, ferrules, and

erasers undergo chemical, dimensional, and technical changes in the

Philippines. *Id.*, Appx000014-017, Appx000049-051, Appx000073,

Appx000092-104.

Therefore, Commerce's determination that only the wooden slats are

further processed in the Philippines—but the further processing does not

change the physical characteristics of the wooden slats—and that the

essential characteristics of the product are imparted in China and do not

change through the further production steps in the Philippines is supported

by substantial evidence.

School Specialty makes additional meritless arguments regarding Commerce's analysis of these two factors. School Specialty alleges Commerce failed to follow a logical sequence of steps by analyzing these factors because Commerce worked backwards to justify its result. School Specialty Br. at 21. This argument fails and is unsupported by the record. School Specialty Br. at 22. Second, School Specialty alleges Commerce incorrectly combined its analysis of the physical characteristics factor with the analysis of the product's essential characteristics. School Specialty Br. at 22. As the Defendant's Brief correctly notes, this Court has previously approved of determinations that have combined the analysis of the factors under section 351.225(j). Defendant's Br. at 27. Further, Commerce specifically addressed and rejected School Specialty's arguments concerning the essential characteristic of the components on the basis that School Specialty's arguments were not grounded in Commerce's analysis pursuant to 19 C.F.R. § 351.225(j). Final Scope Order at 11, Appx000430-431.

To the extent School Specialty states Commerce's regulations limit Commerce to consider where the essential characteristics of the product, rather than a component is produced, School Specialty is incorrect. School Specialty Br. at 22. As the Defendant's Brief aptly notes, consistent with

this Court in *Bell Supply II* and Commerce's longstanding practice, Commerce is not limited to solely considering downstream processing. Defendant's Br. at 25-26.[2]

Lastly, to the extent that School Specialty relies on any hypothetical manufacturing scenarios not included in its scope application, such hypotheticals are irrelevant because they do not reflect the details included in School Specialty's scope application which were reviewed by Commerce. School Specialty Br. at 23 ("if the facts of this case were different . . . ."); *see e.g., Sigma Corp.*, 86 F.Supp.2d at 1352 (declining to consider an argument that was not previously presented before the agency in the course of its review during the administrative proceedings at issue). Commerce's determination is properly based on the specific facts that School Specialty introduced through its scope application.

Accordingly, Commerce's determination that these factors weigh against finding that the cased pencils are substantially transformed in the Philippines is supported by substantial evidence and in accordance with law.

---

[2] Dixon agrees and adopts Defendant's arguments on this issue as contained on pages 25-26 of Defendant's brief.

26

3. End Use Determination

School Specialty does not allege that Commerce is precluded from contemplating pre-determined end use as part of its multi-factored substantial transformation analysis. *See* School Specialty Br. at 29. Instead, School Specialty simply disagrees as to the weight Commerce placed on the fact that the inputs are prefabricated in China. *Id.* Because reweighing the factors is outside this Court's review, the Court should reject these arguments. *See e.g. Goldlink Indus. Co.*, 431 F.Supp.2d at 1326 ("the Court may not substitute its judgment for that of [Commerce] when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*.").

In addition, Commerce's determination that the end use determination factor weighed against finding that the cased pencils are substantially transformed in the Philippines is supported by substantial evidence and in accordance with law. Commerce examined the intended end use of the downstream product and found that the inputs from China, including the graphite/color cores and wooden slats, were manufactured to the point where their physical and essential characteristics are specifically

27

and highly tailored for the assembly of cased pencils that fall within the scope of the *Order*. Final Scope Ruling, 12-13, Appx000431-432. Commerce correctly concluded that this factor did not support a finding of substantial transformation. *Id.*

This conclusion is supported by the record, which shows the inputs from China, including the graphite/color cores and wooden slats, [███

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████]. *See* School Specialty Scope Application (C.R. 1), Appx000048, Appx000050-51.

Therefore, given the record evidence, Commerce's conclusion that this factor weighs against finding that the cased pencils are substantially transformed in the Philippines is supported by substantial evidence and is in accordance with law.

### 4. Nature and Sophistication of Processing Determination

Commerce also properly determined that the processing occurring in the Philippines does not rise to the level of sophistication that would satisfy the substantial transformation test. Final Scope Ruling at 13, Appx000432.

Contrary to School Specialty's argument, Commerce did not "completely ignore" the downstream processing. School Specialty Br. at 30. Commerce considered all the steps described on the record, regardless of their location, and noted that six of the nine production steps that occur in the Philippines amount to simple assembly of the cased pencils. Final Scope Ruling at 13, Appx000432. Those six steps are varnishing, heading, stamping, tipping, sharpening, and packaging, which are described in the scope application as "Pencil Finishing and Packaging." School Specialty Scope Application (C.R. 1), Appx000016-17. The three remaining production steps relate to the processing of the wooden slats through grooving, sandwiching, and shaping, and Commerce explained that due to the extent of the prefabrication in China, these additional processing steps are not significant. Final Scope Ruling at 13, Appx000432.

School Specialty failed to develop facts on the record to support its arguments on appeal that the processing operations in the Philippines are particularly sophisticated or complex when it provided only brief descriptions of these steps. *Id.*; *see QVD Food Co.*, 658 F.3d at 1324 (stating "the burden of creating an adequate record lies with [interested parties] and not with Commerce" (alteration in original)). Because School Specialty

failed to develop these facts, it now asks this Court to draw inferences in its favor and reweigh the evidence, which the Court must decline. *See SMA Surfaces, Inc. v. United States*, 617 F. Supp. 3d 1263, 1279 (Ct. Int'l Trade 2023) (declining to draw inferences in plaintiff's favor where plaintiff failed to meet its burden to create an adequate record); *see Sigma Corp.*, 86 F.Supp.2d at 1351 ("the question is whether the record adequately supports the decision of [Commerce], not whether some other inference could reasonably have been drawn.").

Therefore, substantial evidence supports Commerce's determination that this factor did not support a finding that the products undergo substantial transformation in the Philippines.

### 5. Cost of Production and Level of Investment Determination

Commerce correctly determined that School Specialty did not provide sufficient quantitative information for Commerce to consider the costs of production and levels of investment relative to that undergone in China. Final Scope Ruling at 14, Appx000433. School Specialty points to no quantitative information that Commerce could have relied on and instead alleges that Commerce ignored qualitative record evidence. School Specialty Br. at 34. Commerce considered the evidence on the record. As

Commerce noted, School Specialty provided photographs and descriptions of the work done in the Philippines; however, this did not amount to quantitative information sufficient to adequately determine whether the cost of production in the Philippines represented a substantial transformation conferring country of origin. Final Scope Ruling at 14, Appx000433. Commerce acknowledged that from the information provided on the record, it could identify the likely machinery, but could not value it. *Id.*

School Specialty's argument that Commerce could infer that significant capital would be required if it were to set up similar operations in the United States is similarly unsupported by the record. School Specialty has the burden of production, and its choice to not produce quantitative information to support its scope application does not constitute error by Commerce in this proceeding. *See QVD Food Co.*, 658 F.3d at 1324; *see Zenith Elecs. Corp. v. United States*, 988 F.2d 1573, 1583 (Fed. Cir. 1993). Contrary to School Specialty's argument, Commerce was not required to request additional information on this factor. School Specialty Br. at 35. Commerce *may* issue questionnaires and verify submissions received, but it is not required to do so. 19 C.F.R. § 351.225(f)(3). "Without

any other statute or regulation obligating Commerce to ask for additional evidence before a final determination, the burden of developing an adequate record falls on [School Specialty], not Commerce." *SMA Surfaces, Inc. v. United States*, 617 F. Supp. 3d at 1279. Commerce's lack of a request for additional information did not violate administrative process, and Commerce's Final Scope Ruling is supported by substantial evidence. *See id.*

## II.   Commerce Appropriately Considered CBP Rulings

Turning to School Specialty's second issue, School Specialty argues that Commerce failed to consider a CBP ruling concerning similar merchandise. This assertion is meritless.

First, the record shows that Commerce considered the CBP determinations submitted by both School Specialty and Dixon. *See* Final Scope Ruling at 8-9, Appx00427-428. Commerce acknowledged that School Specialty placed the ruling on the record and explained that that although it "may consider CBP determinations, . . . it is not bound by the determination of any other agency." *Id.*

School Specialty has previously acknowledged this, and noted in the underlying proceeding that Commerce is not bound by CBP Ruling

32

N333392. Letter from HuschBlackwell LLP to SEC of Commerce
Pertaining to School Specialty Rebuttal Comments on Scope Application
(C.R. 4) at 16, Appx000287. These statements are consistent with
Commerce's regulations, which state that it "is not bound by the
determinations of any other agency, including . . . country of origin marking
rulings issued by [CBP]." 19 C.F.R. § 351.225(j).

Second, School Specialty previously acknowledged that Commerce's
country of origin analysis differs from CBP's, and requested that "[t]o the
extent the [Commerce] considers these authorities, it should take note of
the key differences between the cited cases in the present scope
inquiry . . . ." Letter from HuschBlackwell LLP to SEC of Commerce
Pertaining to School Specialty Rebuttal Comments on Scope Application
(C.R. 4) at 3, Appx000274. Commerce did just that when it noted that CBP
rulings are performed under a "different analysis." Final Scope Ruling at 9,
Appx000428. School Specialty's complaint instead appears to target what
weight Commerce gave this CBP ruling. Because the Court's review is
limited to the substantial evidence standard, the Court should find that
Commerce's approach was correct and in accordance with law. *See e.g.*,
*Goldlink Indus. Co.*, 431 F.Supp.2d at 1326.

33

## III.  Conclusion

For the foregoing reasons, Dixon respectfully submits this Court deny

Plaintiff's motion for judgment on the agency record and sustain

Commerce's Final Scope Ruling in its entirety because it is supported by

substantial evidence and is in accordance with law.

Respectfully submitted,
*/s/ Felicia Leborgne Nowels*
Felicia Leborgne Nowels
Michael J. Larson
Li X. Massie
Akerman LLP
201 E. Park Avenue
Suite 300
Tallahassee, FL 32301
Felicia.nowels@akerman.com
(850) 224-9634
*Attorneys for Dixon*
*Ticonderoga Company*

January 28, 2025

## Certificate of Compliance

I hereby certify that this document complies with the Rules of this Court and the Court's scheduling order in that it contains 6997 words, including tables, text, footnotes, and headings.

*/s/ Felicia Leborgne Nowels*