## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| SCHOOL SPECIALTY, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) Before: The Honorable M. |
| | ) Miller Baker |
| Defendant, | ) |
| | ) Court No. 24-00098 |
| and | ) |
| | ) |
| DIXON TICONDEROGA | ) |
| COMPANY, | ) |
| | ) |
| Defendant-Intervenor. | ) |
| | ) |

### REPLY BRIEF IN FURTHER SUPPORT OF SCHOOL SPECIALTY'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Nithya Nagarajan
Stephen Brophy
HUSCH BLACKWELL, LLP
1801 Pennsylvania Avenue
NW Suite 1000
Washington, DC 20006
(202) 378-2334
nithya.nagarajan@huschblackwell.com
stephen.brophy@huschblackwell.com
(202) 378-2409
*Counsel for School Specialty, LLC*

Dated:  February 27, 2025

i

## TABLE OF CONTENTS

**Page(s)**

I.      Introduction ........................................................................ 1

II.     Summary of Argument .................................................... 1

III.    Commerce's Substantial Transformation Analysis is
        Flawed and Not in Accordance with Law ...................... 2

        A.    Commerce Misconstrued and Misapplied the
              Substantial Transformation Test ......................... 3

        B.    Commerce Misapplied 19 C.F.R. § 351.225(j)(2) in
              Determining The Essential Characteristics of a
              Pencil ..................................................................... 7

        C.    Commerce's Flawed Reliance on "Prefabrication"
              Undermines the Construct of the Substantial
              Transformation Test ........................................... 10

              1.    *Physical and Essential Characteristics* ............... 11

              2.    *Nature and Sophistication of Processing* ........... 13

              3.    *Intended Use* ............................................ 15

IV.     Commerce Failed to Adequately Consider CBP Ruling
        N33392 ........................................................................... 17

V.      Conclusion .................................................................... 21

# TABLE OF AUTHORITIES

<u>**Page(s)**</u>

<u>**Cases**</u>

*Bell Supply Co. v. United States,*
    888 F.3d 1222 (Fed. Cir. 2018) ............................................................... 8

*Bell Supply Co., LLC v. United States,*
    348 F. Supp. 3d 1281 (Ct. Int'l Trade 2018) ...........................4, 5, 13, 14

*Crawfish Processors Alliance v. United States,*
    483 F.3d 1358 (Fed. Cir. 2007) ............................................................. 20

*Huvis Corp. v. United States,*
    570 F.3d 1347 (Fed. Cir. 2009) ............................................................. 17

*Nat'l Hand Tool Corp. v. United States,*
    16 Ct. Int'l Trade 308 (1992) ................................................................ 20

*SolarWorld Americas, Inc. v. United States,*
    910 F.3d 1216 (Fed. Cir. 2018) .......................................................17, 19

*Star Fruits S.N.C. v. United States,*
    393 F.3d 1277 (Fed. Cir. 2005) ............................................................... 6

*Uniroyal, Inc. v. United States,*
    542 F. Supp. 1026 (Ct. Int'l Trade 1982) ............................................... 16

*WelCom Prods., Inc. v. United States,*
    865 F. Supp. 2d 1340 (2012) ................................................................... 6

*Worldwide Door Components, Inc. v. United States, et al.,*
    119 F.4th 959 (Fed. Cir. 2024) ........................................................18, 20

<u>**Regulations**</u>

19 C.F.R. § 351.225(j) ...................................................................... passim

<u>**Other Authorities**</u>

*Antidumping Duty Order: Certain Cased Pencils from the People's
    Republic of China,*
    59 Fed. Reg. 66909 (Dep't of Commerce Dec. 8, 1994) ........................... 2

*Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws,*
86 F.R. 52,300 (Sept 20, 2021) ................................................................. 9

## I.    Introduction

On behalf of plaintiff School Specialty, LLC ("School Specialty"),
we respectfully submit the following reply brief in further support of
School Specialty's Rule 56.2 Motion for Judgment on the Agency Record,
which challenges the U.S. Department of Commerce's ("Commerce")
final scope ruling in the antidumping duty order on certain pencils from
the People's Republic of China ("China").  *See* ECF No. 28 (the "School
Specialty Br.").  This brief is submitted in reply to the response briefs
filed by Defendant United States ("Defendant Br.", ECF No. 33) and
Defendant-Intervenor the Dixon Ticonderoga Company ("Dixon Br.",
ECF No. 35).

## II.    Summary of Argument

The Court should reject Defendant and Defendant-Intervenor's
argument that the Final Scope Ruling, *Certain Cased Pencils from the
People's Republic of China: Scope Ruling on Products Produced by
School Specialty, LLC in the Philippines* (Case No. A-570-827) ("Final
Scope Ruling"), issued on May 6, 2024, is supported by substantial
evidence and in accordance with law. Commerce acted arbitrarily and
abused its discretion by incorrectly applying the substantial
transformation test, placing undue emphasis on prefabrication in a

manner that contradicts both its own regulations and established case law. Furthermore, Commerce failed to adequately consider CBP Ruling N33392, which fairly detracts from its conclusions and directly addresses the same products. Accordingly, we respectfully request that the Court hold unlawful Commerce's Final Scope Ruling and remand this case for Commerce to revise the Final Scope Ruling in accordance with the Court's decision.

## III.   Commerce's Substantial Transformation Analysis is Flawed and Not in Accordance with Law

This case raises a fundamental question: does Commerce have the authority to arbitrarily extend the scope of an antidumping duty order on finished cased pencils to encompass the upstream raw material inputs used in the production of finished pencils in a third country. *See Antidumping Duty Order: Certain Cased Pencils from the People's Republic of China*, 59 Fed. Reg. 66909 (Dep't of Commerce Dec. 28, 1994) ("Order").  Through its flawed application of the substantial transformation test— by relying on a single factual predicate rather than conducting a comprehensive review of the entire record as required by statute and regulations —Commerce did exactly that. It unlawfully expanded the scope of the Order, resulting in an illogical and

unjust outcome with broader consequences beyond this case—that unfished raw material inputs will now be subject to antidumping orders covering finished goods.

### A. Commerce Misconstrued and Misapplied the Substantial Transformation Test

At the outset, School Specialty's primary argument is that Commerce misapplied the substantial transformation test in the underlying Final Scope Ruling. *See* Appx000420-000434. Defendant argues that "Commerce lawfully conducted its analysis in determining the country of origin" and that its "consideration of prefabrication" was in accordance with law. Defendant Br. at 19, 22. Specifically, Defendant contends that "the regulation does not limit Commerce to only consider the factors listed in 19 C.F.R. § 351.225(j)(1)(i)-(vi)." *Id.* at 14. *See also* Dixon Br. at 22 ("Commerce's regulations do not prevent Commerce from looking to other factors in addition to each of the factors listed in section 351.225(j)"). It then asks the Court to reject "School Specialty's attempt to limit Commerce's flexibility in conducting country of origin determinations." *Id.* at 14.

Contrary to the Defendant's arguments, however, School Specialty is not contending that the Court limit Commerce's flexibility to consider

prefabrication. Rather, School Specialty's focused argument is that Commerce abused its discretion by fixating and improperly over relying on "prefabrication" to arrive at its desired conclusion—that no substantial transformation occurred in the Philippines.

In other words, what the Defendant and Defendant-Intervenor misconstrue in their brief is the crux of School Specialty's argument: giving undue weight to a single factor— "prefabrication"—for one component of a multi-component production process and using it as the sole frame of reference for all 19 C.F.R. § 351.225(j)(1) factors constituted an abuse of discretion. This approach not only misapplies the substantial transformation test but also lacks support in both Commerce's regulations and relevant case law.

It is a well-established precedent, as this Court has explained, that "Commerce must explain how each factor weighs in the balance and why." *Bell Supply Co., LLC v. United States*, 348 F. Supp. 3d 1281, 1295 (Ct. Int'l Trade 2018) ("*Bell Supply II*")). In other words, each factor must be assessed on its own merits, *not in relation* to either "prefabrication" or any other factor. Commerce's failure to assess each factor independently, and instead using "prefabrication" as a catch-all

4

frame of reference, undermines the integrity of its scope ruling and violates the statutory and regulatory framework. In fact, for each factor that Commerce determined did not support substantial transformation, it cited "prefabrication" as its sole rationale. *See* Final Scope Ruling, Appx000427-000433 (citing prefabrication as the predominant factor in concluding that the physical characteristics of the product, its intended end use, and the nature and sophistication of processing did not support a finding of substantial transformation.)

Importantly, this Court has also rejected the overemphasis on the upstream production process—such as "prefabrication"—in substantial transformation determinations. In *Bell Supply II*, the Court explained that "reducing the analysis to a mere comparison between the downstream and upstream processing does not aid in the substantial transformation inquiry." 348 F. Supp. 3d at fn.9. This is precisely why when considering the nature and sophistication factor, for example, the Court went on to state that even a *less* sophisticated downstream production process does not preclude weighing this factor in favor of substantial transformation. *Id.* at 1290 ("A scenario could conceivably arise in which a downstream production process, though less

sophisticated than the upstream production process, is still sophisticated for purposes of the substantial transformation test").

Commerce clearly conflated the analysis in this case. Instead of considering each individual factor, Commerce fixated solely on "prefabrication" as its guiding reference point. In doing so, Commerce's narrow and biased approach overlooked the complexity and significance of the downstream manufacturing process, distorting the substantial transformation analysis by ignoring key elements that should have been considered in the manufacture of a finished case pencil. Contrary to Defendant's argument, Commerce acted arbitrarily, capriciously, and contrary to the law, by disregarding established law and its own regulations. *WelCom Prods., Inc. v. United States*, 865 F. Supp. 2d 1340, 1344 (2012) (explaining that "{a}n abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence or represent an unreasonable judgment in weighing relevant factors.") (citing *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005)). Accordingly, the Court should remand the Final Scope Ruling and

instruct Commerce to conduct its scope ruling analysis in a manner that comports with case law and precedent.

**B.    Commerce Misapplied 19 C.F.R. § 351.225(j)(2) in Determining The Essential Characteristics of a Pencil**

In an attempt to justify Commerce's reliance on "prefabrication," Defendant argues that evidence of prefabrication is "directly relevant" to the determination under 19 C.F.R. § 351.225(j)(2), which allows Commerce to consider "where the essential component of the product is produced or where the essential characteristics of the product are imparted." *See* Defendant Br. at 20. This argument is flawed for several reasons.

First, as detailed in School Specialty's initial brief, Commerce incorrectly identified the wooden slats as imparting the "essential characteristics" of the pencils. *See* School Specialty Br at 28-34.  In this case, the wooden slats, being non-writing components, cannot be considered essential to the pencil's function. The essential characteristics of the finished pencil—the product at issue—is the pencil sandwich produced in the Philippines, which includes a graphite core encased in wood. *See Id.*; *Rebuttal Comments*, Appx000278; *see also Cased Pencils Order* (description of covered merchandise).

7

Second, Commerce failed to explain in the Final Scope Ruling why or how evidence of prefabrication is "directly relevant" to the determination of where the essential characteristics of the product are imparted. Commerce's own regulations mandate a clear focus on where the product's essential qualities—those that define its purpose—are created, not on "prefabrication." *See* § 351.225(j)(2).

Even if prefabrication were considered relevant, Commerce still abused its discretion by applying an improper substantial transformation test. In the Final Scope Ruling, Commerce conflated the concept of what constitutes "essential characteristics" under § 351.225(j)(2) with the "physical characteristics" of the product under § 351.225(j)(1)(ii).  These are two separate and distinct analyses. To justify this conflation, Defendant and Defendant-Intervenor cites to *Bell Supply*, 888 F.3d 1222, 1228-1229 (Fed. Cir. 2018), where the Court upheld Commerce's treatment of "product properties, essential components, and intended end use as a single factor, supported by substantial evidence." *See* Defendant Br. 26-27; Dixon Br. 31-32.

However, what Commerce and the Defendants overlooked is that *Bell Supply* was decided in 2018, when Commerce's practice was to

group those factors together. On September 20, 2021, Commerce issued new regulations listing "physical characteristics" and "essential characteristics of the product" as separate factors that the agency may consider. *Scope Application*, Appx000080-000104 (*Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 F.R. 52,300, 52,321 (Sept 20, 2021)); see also 19 C.F.R. § 351.255(j)(1)(ii) and (j)(2). Consequently, Defendant's justification here is illogical, arbitrary, and contrary to the law because Commerce applied an outdated test, rather than following the current substantial transformation test as outlined in § 351.225(j). *See* Final Scope Ruling, Appx000423 ("For this scope inquiry, we considered the following factors laid out in 19 CFR §351.225(j) when performing our substantial transformation analysis . . . .").

Finally, Defendant contends that § 351.225(j)(2) allows Commerce to consider prefabrication with respect to all § 351.225(j)(1) factors. *See* Defendant Br. at 20-22. In the Final Scope Ruling, however, Commerce references § 351.225(j)(2) solely in connection with § 351.225(j)(1)(ii), the "physical characteristics" factor. *See* Appx000430. As such, Commerce's reliance on prefabrication to justify a conclusion that no

9

substantial transformation occurred under the "intended use" factor (19 C.F.R. § 351.225(j)(1)(iii)) and the "nature and sophistication of processing" factor (19 C.F.R. § 351.225(j)(1)(iv)) is unreasonable. *See Id.* at Appx000427-000433 (citing prefabrication as the predominant factor in concluding that the physical characteristics of the product, its intended end use, and the nature and sophistication of processing did not support a finding of substantial transformation.) Therefore, the Court should reject Defendant's arguments as contrary to the law and remand the Final Scope Ruling.

### C.    Commerce's Flawed Reliance on "Prefabrication" Undermines the Construct of the Substantial Transformation Test

The unreasonable fixation on "prefabrication" caused Commerce to misjudge the true complexity and importance of the processing that occurs in the Philippines. According to the substantial transformation framework under § 351.225(j), it is the processing in the third country that should be evaluated, not simply the imported raw material inputs. Notably, as shown below, Commerce seemed to suggest that, had it not fixated on prefabrication it would have likely concluded that the factors favored substantial transformation. In effect, Commerce's undue focus

on prefabrication prevented it from giving proper weight to the critical

and fundamental changes that occur in the Philippines, thus distorting

the analysis.

1.  *Physical and Essential Characteristics*

Defendant contends that Commerce's approach in considering

both the physical and essential characteristics was "logical and in

accordance with law" because "it was not an error for Commerce to

consider physical characteristics and essential characteristics as a

single factor." Defendant Br. 33-34. Further, Defendant maintains that

the Final Scope Ruling is supported by substantial evidence and in

accordance with the law because Commerce properly "addressed the

evidence of processing in the Philippines." Defendant Br. at 36. The

Court should reject both arguments.

First, as explained in Section I.B above, combining the "essential

characteristics" and "physical characteristics" of the product is neither

logical nor legally sound. This approach relies on an outdated

framework that predates the enactment of § 351.225(j), and as such, it

is an abuse of discretion.

Likewise, the Court should reject Defendant's second argument. Commerce's excessive focus on, and undue reliance upon, the prefabrication process in China, Defendant admits that Commerce "acknowledged School Specialty's argument that essential characteristics of the components were changed by processing in the Philippines." Defendant Br. at 35; Final Scope Ruling, Appx000430-000431. Yet, "Commerce found this evidence insufficient to show a change in the important qualities of the component when compared to the evidence the slats were prefabricated in China to 'specific dimensions' to fit in School Specialty's machinery.[1]" *Id.*

In effect, rather than focusing on the actual physical transformation the slats undergo in the Philippines, Commerce improperly compared the downstream processing of the slats which occurs in the Philippines to the upstream prefabrication process. *See Bell Supply II,* 348 F. Supp. 3d at fn.9 (explaining that a "mere

---

[1]  It is also important for the Court to note that School Specialty is an importer, not the manufacturer of the cased pencils. Yet both Defendant and Commerce refer to "School Specialty's machine," further highlighting Commerce's apparent bias. This underscores the concern that Commerce did not fully familiarize itself with the facts before issuing the Final Scope Ruling, instead tailoring its analysis to reach a predetermined conclusion—that no substantial transformation occurs in the Philippines.

comparison between the downstream and upstream processing does not aid in the substantial transformation inquiry.")

Again, as the Court held in *Bell Supply II*, "Commerce must explain how *each factor weighs in the balance and why*"; not how it compares to "prefabrication." *Id.* 348 F. Supp. 3d at 1295. Indeed, Commerce appears to implicitly concede that, had it considered the entire manufacturing process in the Philippines, instead of fixating on the "prefabrication", it would likely have concluded that substantial transformation had occurred. *See* Defendant Br. at 35.

In sum, by conflating the "essential characteristics" test with the "physical characteristics" test and placing undue emphasis on prefabrication, Commerce failed to accurately analyze the significant physical changes that take place in the Philippines. Accordingly, such an analysis is illogical, unsupported by substantial evidence, and not in accordance with the law.

2.    *Nature and Sophistication of Processing*

With respect to the nature and sophistication of processing, Commerce—once again— viewed everything solely through the lens of prefabrication. Commerce determined that the processes of grooving,

sandwiching, and shaping the wooden slats were not significant in comparison to the prefabrication that occurred in China. *See* Defendant Br. at 36; Final Scope Ruling, Appx000015-000017. Defendant urges the Court to reject School Specialty's claims, arguing that "Commerce would have been deprived of important data if it had not considered both downstream and upstream processing." *Id.* at 37 (*citing Bell Supply II*, 348 F.Supp.3d at fn. 9).  Defendant's arguments are nonsensical because it is comparing a raw wooden slat as being equivalent to the multiple manufacturing steps which occur in the Philippines to produce a finished cased pencil, which is akin to saying that raw arborio rice is the same as a finished and plated mushroom risotto.

The Court in *Bell Supply II* saw this potential concern and did not limit itself to this reasoning. It went on and clarified that "mere comparison between the downstream and upstream processing does not aid in the substantial transformation inquiry." *Id.* at fn. 9. Moreover, with respect to the nature and sophistication factor, the Court specifically stated that even a *less* sophisticated downstream production process does not preclude weighing this factor in favor of substantial transformation. *Id.* at 1290 ("A scenario could conceivably arise in

which a downstream production process, though less sophisticated than the upstream production process, is still sophisticated for purposes of the substantial transformation test"). In this instance the downstream process of manufacturing a finished pencil is more sophisticated than manufacturing a raw wooden slat.

In other words, according to the Court's prior guidance, it is the processing in the third country that should be evaluated, not simply the imported raw material inputs. By giving undue weight to upstream processing and ignoring the significance of downstream manufacturing, Commerce has failed to conduct a balanced and legally sound substantial transformation analysis. Accordingly, the Court should remand the Final Scope Ruling.

3. *Intended Use*

As School Specialty previously stated, the manufacturing processes in the Philippines unquestionably alter the intended end use of the raw materials imported from China, which, on their own, are not suitable for writing or drawing. School Specialty Br. at 34-37. In an attempt to justify the misapplication of the intended use factor, the Defendant introduces a new test to rationalize Commerce's undue and

unreasonable focus on prefabrication. "Simply put," according to Defendant, "if a component is imported to create a specific product and is manufactured such that it has no other purpose, it cannot be considered to have any end use other than becoming part of the final product." Defendant Br. at 42. Defendant then asks the Court to reject School Specialty's claims contesting Commerce's end use analysis. *Id.*

Notably, instead of relying on Commerce's own regulations or relevant case law, Defendant relies on *Uniroyal, Inc. v. United States*, 542 F. Supp. 1026 (Ct. Int'l Trade 1982), aff'd, 702 F.2d 1022 (Fed. Cir. 1983)—a Customs and Boarder Protection ("CBP") case. *Id.* In reality, however, Commerce's regulations allow only for consideration of the "intended end-use of the *downstream* product", not whether upstream inputs have undergone prefabrication. § 351.225(j)(1)(iii). This distinction is particularly important in cases like this one, where raw material inputs and finished products serve entirely different functions—such as the raw materials being unsuitable for writing or drawing, in contrast to the cased pencils produced in the Philippines. Furthermore, Commerce's regulations do not support using the

16

"intended use" factor as a strict, definitive test for determining whether inputs have been subject to prefabrication.

In sum, instead of following the Court's guidance in *Bell Supply II* and focusing on each individual fact, as stated before Commerce fixated on "prefabrication" as its sole frame of reference. This resulted in an analysis that deviates from the substantial transformation test outlined in § 351.225(j) and was designed to justify Commerce's predetermined conclusion that no substantial transformation occurred in the Philippines. Accordingly, the Court should remand the Final Scope Ruling because Commerce acted arbitrarily, capriciously, and contrary to the law.

## IV.    Commerce Failed to Adequately Consider CBP Ruling N33392

As established by case precedent, "the substantiality of evidence must take into account whatever in the record fairly detracts from its weight, including contradictory evidence or evidence from which conflicting inferences could be drawn," including CBP rulings. *SolarWorld Americas, Inc. v. United States*, 910 F.3d 1216, 1225 (Fed. Cir. 2018) (quoting *Huvis Corp. v. United States*, 570 F.3d 1347, 1351

(Fed. Cir. 2009)) (emphasis added); *see* also *Worldwide Door Components*, 119 F.4th 959 (2024), at *6.

Defendant claims it did "take into account and consider" the CBP Ruling N33392 that detracted from its findings. Defendant Br. at 43. Specifically, it asserts that it: (1) "acknowledg{ed} that School Specialty had placed the ruling in the record," (2) noted that "CBP rulings are performed under 'a different analysis,'" and (3) stated that while "it may consider such rulings, they are not binding." *See Id.* Additionally, Commerce argues that "from the context it is clear that Commerce considered both Dixon's and School Specialty's submissions regarding CBP cases and found them unhelpful due to their non-binding nature." *Id.* at 52.

However, acknowledging evidence in the record is not the same as actually considering it. To be meaningfully considered, evidence must be read, understood, and evaluated in the context of the issue at hand. In this case, Commerce's Final Scope Determination fails to demonstrate that it genuinely engaged with or meaningfully considered CBP Ruling N33392. This omission is particularly significant given Commerce's treatment of a different CBP ruling—EAPA Case No.

7238—where it explicitly concluded that the ruling was not "probative for determining the country of origin of School Specialty's pencils in this scope inquiry." Final Scope Ruling, Appx000427-000428. By contrast, Commerce neglects to even mention Ruling N33392, strongly suggesting it was disregarded entirely. This oversight is all the more puzzling because Ruling N33392—unlike EAPA Case No. 7238—directly addressed the same products involved in the Final Scope Ruling.

Moreover, Defendant's argument that CBP analyzed the country of origin in Ruling N33392 under a different statute does not absolve it from considering the ruling. As *SolarWorld* makes clear, Commerce is required to consider all evidence that "fairly detracts" from its conclusions, even when that evidence is non-binding. 910 F.3d at 1225. While Commerce was not obligated to adopt CBP's conclusion, its failure to even consider the ruling is indefensible. Ignoring Ruling N33392 creates a practical and illogical dilemma for School Specialty, which is now forced to designate the country of origin as China for one purpose and the Philippines for another. While this dilemma does not require Commerce to adopt CBP's conclusion, it is unreasonable for

19

Commerce to have disregarded a ruling that directly addresses the same issue, especially when it considered a less relevant CBP decision.

Tellingly, the government's cherry-picking of CBP precedents—evidencing an abuse of discretion—becomes even clearer in its rebuttal brief. Defendant heavily relies on *Uniroyal*—a CBP case—as well as *Nat'l Hand Tool Corp. v. United States*, another CBP case, and *Ran-Paige Co. v. United States*, a case involving a GSA contract clause related to the Trade Agreements Act of 1979, to argue that Commerce properly considered the intended use factor under § 351.225(j)(1)(iii). Defendant Br. 40. Yet, it argues that Ruling N33392 is completely irrelevant because it was a CBP case. *Id.* at 49-50.

Given Commerce's failure to consider Ruling N33392, its Final Scope Ruling is unsupported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crawfish Processors Alliance*, 483 F.3d at 1361 (internal quotations and citations omitted). Accordingly, Commerce's Final Scope Ruling is not supported by substantial evidence.

## V.    Conclusion

For the reasons set forth above, Commerce's Final Scope Ruling was not supported by substantial evidence and not in accordance with law. As a result, we respectfully request that the Court hold unlawful Commerce's Final Scope Ruling and remand this case for Commerce to revise the Final Determination in accordance with the Court's decision.

Respectfully submitted,

/s/ Nithya Nagarajan
Nithya Nagarajan
Stephen Brophy
HUSCH BLACKWELL, LLP
1801 Pennsylvania Avenue
NW Suite 1000
Washington, DC 20006
(202) 378-2334
nithya.nagarajan@huschblackwell.com
stephen.brophy@huschblackwell.com

*Counsel to School Specialty, LLC*

Dated: February 27, 2025

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the Court's word limitation requirement. The word count for the foregoing brief, as computed by Husch Blackwell's word processing system (Microsoft Word), is 3,678 words.

Dated:  February 27, 2025                          /s/ Nithya Nagarajan
                                                   Nithya Nagarajan