A-570-827<br>
Remand<br>
Slip Op. 25-97<br>
**Public Document**<br>
E&C/OIX: EC

*School Specialty, LLC v. United States*,
Court No. 24-00098, Slip Op. 25-97 (CIT July 31, 2025)
Certain Cased Pencils from the People's Republic of China

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

**I.   SUMMARY**

The U.S. Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the opinion and remand order of the U.S. Court of International Trade (the Court or CIT) issued in *School Specialty*.[1]  This action arises out of Commerce's May 6, 2024, final scope ruling in which we determined that #2 pencils, drawing pencils, and colored pencils manufactured by School Specialty, LLC (School Specialty) in the Philippines using Chinese inputs and exported from the Philippines to the United States are within the scope of the antidumping duty (AD) order on certain cased pencils (cased pencils) from the People's Republic of China (China).[2]

On July 31, 2025, the Court sustained Commerce's country-of-origin determination in part and remanded in part.[3]  The Court remanded to Commerce for further explanation as to how it balanced its various findings under 19 CFR 351.225(j) to conclude that no substantial transformation occurred in the Philippines.[4]

---

[1] *See School Specialty, LLC v. United States,* Court 24-00098, Slip Op. 25-97 (CIT July 31, 2025) (*School Specialty*).
[2] *See* Memorandum, "Scope Ruling on Products Produced by School Specialty, LLC in the Philippines," dated May 6, 2024 (Final Scope Ruling).
[3] *See School Specialty*, Slip Op. 25-97 at 1.
[4] *Id.* at 22-23.

As set forth below, pursuant to the Court's *Remand Order*, we explain that, while the Philippine assembly process transitions the product from "parts" to "finished goods," it does not alter the product's essential character, and consists of processing steps that are minor. We also explain that, because four of the five substantial transformation factors we examined in our analysis indicate that the production of these cased pencils primarily occurs in China, and because we weighted each of the five factors that we analyzed approximately equally, we find that School Specialty's cased pencils were not substantially transformed in the Philippines.

## II.  SCOPE OF THE *ORDER*[5]

Imports covered by the *Order* are shipments of certain cased pencils of any shape or dimension (except as described below) which are writing and/or drawing instruments that feature cores of graphite or other materials, encased in wood and/or man-made materials, whether or not decorated and whether or not tipped (*e.g.*, with erasers, etc.) in any fashion, and either sharpened or unsharpened. The pencils subject to the *Order* are currently classifiable under subheading 9609.10.00 of the Harmonized Tariff Schedule of the United States (HTSUS). Specifically excluded from the scope of the *Order* are mechanical pencils, cosmetic pencils, pens, non-cased crayons (wax), pastels, charcoals, chalks, and pencils produced under U.S. patent number 6,217,242, from paper infused with scents by the means covered in the above-referenced patent, thereby having odors distinct from those that may emanate from pencils lacking the scent infusion. Also excluded from the scope of the *Order* are pencils with all of the following physical characteristics: (1) length: 13.5 or more inches; (2) sheath diameter: not less than one-and-one-quarter inches at any point (before sharpening); and (3) core length: not more than 15 percent of the length of the pencil.

---

[5] *See Antidumping Duty Order: Certain Cased Pencils from the People's Republic of China,* 59 FR 66909 (December 28, 1994) (*Order*).

In addition, pencils with all of the following physical characteristics are excluded from the scope of the *Order*: novelty jumbo pencils that are octagonal in shape, approximately ten inches long, one inch in diameter before sharpening, and three-and-one eighth inches in circumference, composed of turned wood encasing one-and-one half inches of sharpened lead on one end and a rubber eraser on the other end.

Although the HTSUS subheading is provided for convenience and customs purposes, the written description of the scope of the *Order* is dispositive.

### III.    DESCRIPTION OF MERCHANDISE SUBJECT TO THE FINAL SCOPE RULING

The merchandise subject to the scope inquiry consists of three varieties of pencils: #2 pencils, drawing pencils, and colored pencils. The #2 pencils consist of three subvarieties: (1) a typical #2 pencil, which is a hexagonal writing utensil made of basswood with a graphite core and eraser, measuring 7.5 inches by 0.25 inches in total; and (2) primary and starter pencils, both of which are thicker, but made of the same materials. Drawing pencils are also made of basswood with a graphite core and measure 7 inches by 0.25 inches, while colored pencils are also hexagonal with a colored wax/clay core measuring 7 inches by 0.28 inches.

All pencils of the above varieties have entered the United States under HTSUS subheading 9609.10.0000, *i.e.*, "Pencils and crayons, with leads encased in a sheath."

### IV.    BACKGROUND

Commerce issued the Final Scope Ruling on May 6, 2024, finding that School Specialty's #2 pencils, drawing pencils, and colored pencils manufactured in the Philippines using Chinese inputs were covered by the scope of the *Order* because: (1) the finished cased pencils exported from the Philippines to the United States meet the physical description set forth

in the scope of the *Order*;[6] and (2) the Chinese cased pencil inputs are not substantially transformed such that the third country processing confers country of origin.[7]

Specifically, Commerce found that: (i) the downstream product (*i.e.*, cased pencils) and upstream products (*i.e.* cased pencil inputs) are not a single class or kind of merchandise;[8] (ii) the physical characteristics (including chemical, dimensional, and technical characteristics) and essential characteristics of the product are imparted in China;[9] (iii) the end use of the wooden slats and graphite/color core inputs was pre-determined for pencil production at the time of importation;[10] and (iv) the processing steps performed in the Philippines are not significant.[11]

As a result, Commerce concluded that School Specialty's products have a country of origin of China because they did not undergo substantial transformation in the Philippines.[12] In *School Specialty*, the Court sustained Commerce's country-of-origin determination in part and remanded in part, requiring Commerce to provide the "missing explanation" of why it "concluded the various factors pointing against substantial transformation outweighed the one supporting a contrary finding."[13]

As noted above, the Court instructed Commerce to explain how it weighed the various factors under 19 CFR 351.225(j)(1) and (2) to determine that School Specialty's cased pencils were not substantially transformed in the Philippines.[14] In accordance with the Court's order, we explain below why the single factor (that the upstream and downstream products are of a different class of kind of merchandise) is outweighed by the other factors we examined.

---

[6] *See* Final Scope Ruling at 9.
[7] *Id.* at 10.
[8] *Id.* at 10-11.
[9] *Id.* at 11-12.
[10] *Id.* at 12-13.
[11] *Id.* at 13-14.
[12] *Id.* at 14.
[13] *See School Specialty*, Slip Op. 25-97 at 22-23.
[14] *Id.*

4

## VI.    ANALYSIS

Commerce's regulations at 19 CFR 351.225(j)(1) states that Commerce may conduct a substantial transformation analysis to determine country of origin considering relevant factors, which include: (i) whether the processed downstream product is a different class or kind of merchandise than the upstream product; (ii) the physical characteristics (including chemical, dimensional, and technical characteristics) of the product; (iii) the intended end use of the downstream product; (iv) the cost of production/value added of further processing in the third country or countries; (v) the nature and sophistication of processing in the third country or countries; and (vi) the level of investment in the third country or countries. Section 351.225(j)(2) of Commerce's regulations states that in determining a country of origin, Commerce also may consider where the essential component of the product is produced or where the essential characteristics of the product are imparted. Neither 19 CFR 351.225(j)(1) nor (2) directs Commerce to give one factor more weight than another factor. Rather, in conducting a substantial transformation analysis, Commerce may examine a number of factors, based on the facts on the record given the particular circumstances unique to the products at issue.

As an initial matter, we found that the processed downstream product (*i.e.*, the cased pencil) constitutes a different class or kind of merchandise than the upstream Chinese-made inputs.[15] As the Court acknowledged, our class or kind finding regarding this factor supports a conclusion of substantial transformation.[16] However, whether the processed downstream product is a different class or kind of merchandise than the upstream product is just one of several factors Commerce considers in its substantial transformation analysis.[17] If the class or kind of

---

[15] *See* 19 CFR 351.225(j)(1)(i); *see also* Final Scope Ruling at 10-11.
[16] *See School Specialty*, Slip Op. 25-97 at 22.
[17] *See* 19 CFR 351.225(j)(1)(i)-(vi); *see also* 19 CFR 351.225(j)(2).

merchandise determination under 19 CFR 351.225(j)(1)(i) was dispositive on the issue of substantial transformation, Commerce's consideration of the other relevant factors under 19 CFR 351.225(j) would be unnecessary. As established in *Bell Supply*, the substantial transformation analysis is a test of the "totality of the circumstances."[18] No single factor – including a change in the class or kind of merchandise – is dispositive.

    We find that the evidence on the record regarding four factors weighs against substantial transformation (*i.e.*, physical characteristics, intended end use, nature and sophistication of processing, and where the essential characteristics of the product are imparted) and demonstrates that these pencils were produced in China.[19] First, with respect to the physical characteristics under 19 CFR 351.225(j)(1)(ii), Commerce considered that three of the four Chinese-origin inputs (*i.e.*, graphite/color cores, ferrules, and erasers) used as components of a cased pencil are not further processed in the Philippines, and therefore, they retain their original general physical and essential characteristics when assembled into a complete cased pencil.[20] Second, with regard to intended end use under 19 CFR 351.225(j)(1)(iii), Commerce considered that the wooden slats and graphite/color core inputs were pre-determined for a specific end use (*i.e.*, pencil production) at the time of importation.[21] Third, with regard to the nature and sophistication of processing under 19 CFR 351.225(j)(1)(v), Commerce found that School Specialty's processing steps in the Philippines are not complex and only constitute simple assembly. This is because three of the Chinese-origin inputs that determine a cased pencil's essential nature (*i.e.*, graphite/color cores, ferrules, and erasers) are not further processed in the Philippines, and, while the fourth component (wooden slats) undergoes nominal processing, it is prefabricated in China to the

---

[18] *See Bell Supply Co., LLC v. United States*, 348 F.Supp.3d 1281 (CIT 2018) (*Bell Supply*).
[19] *See* 19 CFR 351.225(j)(1)(ii), (iii), and (v); *see also* 19 CFR 351.225(j)(2); and Final Scope Ruling.
[20] *See* Scope Ruling Application at 8-11; *see also* Final Scope Ruling at 11-12.
[21] *See* Final Scope Ruling at 12-13.

specific dimensions for School Specialty's pencil production machinery.[22]  Fourth, Commerce also considered where the essential component of the product is produced or where the essential characteristics are imparted, in accordance with 19 CFR 351.225(j)(2), finding that the essential characteristics of the product are imparted in China before the inputs are shipped to the Philippines and assembled into a finished cased pencil.[23]

Based on the above analysis, we find that four factors (physical characteristics, intended end use, nature and sophistication of processing, and where essential characteristics are imparted) weigh against a finding of substantial transformation based on a single factor, *i.e.*, that Commerce considered the processed product a different class or kind of merchandise than the inputs.  Although we do not assign numerical weights to each factor, in this case, we weighted each of the five factors that we analyzed approximately equally, as the record illustrates that each factor in this substantial transformation analysis is significant.[24]

As a result, the four factors that weigh against substantial transformation, when taken together, are particularly important in this case (and under this scope) because there is evidence on the record for each which provides a more robust understanding of the limited extent and nature of the operation in the Philippines.  Taken together, the evidence for these four factors indicate that School Specialty's assembly in the Philippines of the prefabricated inputs is not a fulsome enough process to constitute substantial transformation into a new article of commerce.

---

[22] *See* Scope Ruling Application at 8-11.  Six of the nine production steps (*i.e.*, varnishing, heading, stamping, tipping, sharpening, and packaging) consist of finishing and packaging steps and do not appear to confer notable changes to the input and/or finished cased pencils.  The remaining three steps (*i.e.*, grooving, sandwiching, and shaping) relate to the processing of wooden slats, which are prefabricated in China to the specific dimensions to be placed in School Specialty's pencil production machinery.
[23] *See* Final Scope Ruling at 10-11.
[24] In the Final Scope Ruling, we explained that we also would have considered quantitative evidence regarding two other factors of the substantial transformation analysis:  (1) cost of production/value added of further processing in the Philippines; and (2) the level of investment in the Philippines, had School Specialty provided it.  We found that there was insufficient evidence on the record to reach a determination on these factors.

We reach this conclusion because the evidence on record indicates that the production process of the prefabricated inputs primarily occurs in China, most of the inputs are designed to specific dimensions to be assembled in Philippines and are not further processed in the Philippines, and the processing that does occur in the Philippines is limited. Therefore, we find that the Chinese inputs are not substantially transformed such that the processing in the Philippines confers country of origin, based on the facts of the record and the totality of the circumstances.

Accordingly, for these final results of redetermination, Commerce concludes that the five factors we analyzed are each important and equally significant. Taken together, the evidence regarding the four factors which weigh against a finding of substantial transformation (*i.e.*, physical characteristics, intended end use, nature and sophistication of processing, and where the essential characteristics of the product is imparted) outweighs the evidence regarding the single factor (class or kind of merchandise) which supports a finding of substantial transformation. As a result, we continue to find that, because School Specialty's cased pencils did not undergo substantial transformation in the Philippines, they are within the scope of the *Order*.

## VII. INTERESTED PARTY COMMENTS

On January 5, 2026, Commerce released the Draft Results of Redetermination to all interested parties and invited parties to comment.[25] On January 9, 2026, Dixon Ticonderoga Company (Dixon) submitted comments agreeing with the Draft Results of Redetermination.[26] We did not receive comments from other interested parties. Accordingly, we made no changes to the Draft Results of Redetermination for these final results of redetermination.

---

[25] *See* Draft Results of Redetermination Pursuant to Court Remand, *School Specialty, LLC v. United States,* Court No. 24-00098, Slip Op. 25-97 (CIT July 31, 2025), dated January 5, 2026 (Draft Results of Redetermination).
[26] *See* Dixon's Letter, "Comments on Draft Remand Redetermination," dated January 9, 2026.

## VIII. FINAL RESULTS OF REDETERMINATION

In compliance with the Court's remand order in *School Specialty*, we continue to determine that School Specialty's pencils at issue in Commerce's May 6, 2024, final scope ruling are covered by the scope of the *Orders*. Should the Court affirm these final results of redetermination, Commerce will issue relevant instructions, as appropriate, to U.S. Customs and Border Protection.

2/6/2026

X _____

Signed by: CHRISTOPHER ABBOTT

Christopher Abbott,
Deputy Assistant Secretary
 for Policy and Negotiations,
 performing the non-exclusive functions and duties
 of the Assistant Secretary for Enforcement and Compliance.